## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES CAMPBELL,    :

    Plaintiff,   :

        :  Civil Action No.:  89-3016 (RMU)

    v.     :

        :  Document Nos.:   152, 154, 159

UNITED STATES DEPARTMENT :

OF JUSTICE,     :  **FILED**

        :

    Defendant.  :  **JUN 2 0 2002**

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

### MEMORANDUM OPINION

**DENYING THE PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION;**
**DENYING THE DEFENDANT'S MOTION TO ALTER OR AMEND THE JUDGMENT;**
**DENYING THE DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

## I. INTRODUCTION

The D.C. Circuit reviewed and remanded this 13-year-old Freedom of

Information Act ("FOIA") case after providing the applicable guidelines in evaluating the

national security justifications under FOIA's exemption 1, codified as 5 U.S.C. §

552(b)(1).  *Campbell v. United States Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998).

After applying the guidelines set forth in the D.C. Circuit's decision, this court issued a

Memorandum Opinion and supplemental order on September 28, 2001 denying the

defendant's motion for summary judgment.  As part of that ruling, the court also granted

the plaintiff's motion for limited discovery as to the location and contents of the disputed

tickler files to assist the plaintiff and this court in gauging the adequacy of the Federal

Bureau of Investigation's ("FBI") search.  The  matter now comes before the court on the

plaintiff's motion for partial reconsideration[1] of the court's September 28, 2001

Memorandum Opinion and supplemental order, the defendant's motion to alter or amend

that same judgment, and the defendant's motion for a protective order staying the limited

discovery allowed by the court.  After considering the parties' submissions, the

applicable law, and the substantial record herein, the court denies the plaintiff's and the

defendant's respective motions.

## II.   BACKGROUND

### A.  Factual History

The facts giving rise to the plaintiff's claims are set forth in the D.C. Circuit's

opinion, which reversed this court's decision denying the plaintiff's claims.  *Campbell*,

164 F.3d 20.  The plaintiff is a journalist and author commissioned by two London

publishers to write a biography about the 1960s writer and civil-rights activist James

Baldwin.  Compl. ¶ 4.  On May 10, 1988, in the course of conducting his research, the

plaintiff filed a FOIA request with the FBI's New York office seeking to obtain the FBI's

"file" pertaining to James Baldwin.  *Id*.  Shortly thereafter, the FBI informed the plaintiff

that his request was being forwarded to FBI headquarters for processing.  *Id*. ¶ 5.

Because of the sheer number of responsive documents combined with the overall number

of FOIA requests, the FBI notified the plaintiff in September 1988 that his request would

---

[1]     The court notes that the Federal Rules of Civil Procedure do not recognize the terminology of a "motion for reconsideration."  Although litigants will commonly refer to a request to alter or amend a court's prior judgment as a "motion for reconsideration," Rule 59(e) and this court refer to such a motion as a "motion to alter or amend a judgment."  Fed. R. Civ. P. 59(e); Standing Order ¶ 15; Initial Scheduling & Procedures Order ("Init. Sched. Order") dated Sept. 14, 2000 ¶ 7.  With their instant motions, the parties ask the court to revisit its prior decision, which is not a final judgment since it falls in the category of an interlocutory decision under Rule 54(b), whereby an appeal to the Court of Appeals may not be drawn until the resolution of the entire case forthwith.

be dealt with in the order that it was received and that the FBI denied the plaintiff's request for expedited treatment. *Id.* ¶¶ 9-11. Following a flurry of written correspondence and the release of relatively few documents, the plaintiff filed his initial complaint on November 2, 1989, seeking to compel the FBI to expedite his request for the documents. *Id.* ¶¶ 1, 3. The defendant, the U.S. Department of Justice, represents the FBI in this action.

### B.  Procedural History

### 1.  The Plaintiff's Initial Complaint and Proceedings

After the plaintiff's initial filing, Judge Pratt denied the plaintiff's request for expedited review and required the FBI to file a status report updating its progress as to its search for documents responsive to the plaintiff's request. Order dated Dec. 14, 1989 (Pratt, J.). That same day, the FBI released about 1,000 documents that were responsive to the plaintiff's request. *Campbell v. United States Dep't of Justice*, 1996 U.S. Dist. LEXIS 14996, at *4, 1996 WL 554511, at *1 (D.D.C. 1996). On March 13, 1990, both the FBI and the Central Intelligence Agency ("CIA") released more documents relevant to the plaintiff's request. *Id.* at *5, *1. Over the course of the next several years, Judge Pratt issued multiple stays giving the government more time to conduct reviews of withheld documents in light of new Supreme Court precedent and Executive Agency Guidelines.[2] *Id.* As a result of these reviews, the defendant declassified and released

---

[2]     The court granted stays to allow review of documents in light of the more stringent review standards regarding confidential sources contained in *United States Dep't of Justice v. Landano*, 508 U.S. 165 (1993) (holding that the government is not entitled to the presumption that all sources supplying information to the FBI in the course of a criminal investigation are confidential sources within the meaning of the section of FOIA exempting agency records compiled for law enforcement purposes). In addition, the court also granted an extension of time so that the defendant could apply the new guidelines issued by the United States Attorney General regarding FOIA requests. *Campbell*, 1996 U.S. Dist. LEXIS 14996, at **5-6, 1996 WL 554511, at *2.

more documents to the plaintiff. *Id.* at *6, *1. The defendant filed a motion for summary judgment in August 1990 and the plaintiff filed his motion for summary judgment in February 1995. In October 1995, the case was transferred to the below-signed member of this court. In June 1996, the parties filed their final briefings on the cross-motions for summary judgment and the case became ripe for decision.

This court initially granted in part and denied in part without prejudice the defendant's motion for summary judgment and granted in part and denied in part without prejudice the plaintiff's motion for summary judgment. *Id.* The court also ordered an *in camera* review of certain documents to determine the applicability of FOIA exemption 7(E), which affords protection to information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . ." *Id*; 5 U.S.C. § 552(b)(7)(E). Subsequently, the court granted in part the remainder of the defendant's summary judgment motion. Order dated Aug. 6, 1997.

### 2. The Appeal, Remand, and Subsequent Ruling on the Parties' Cross-Motions for Summary Judgment

As previously stated, the plaintiff appealed the court's ruling on the summary judgment motions to the D.C. Circuit. The plaintiff argued that the FBI's search for documents responsive to his request was inadequate and that the documented support invoking the FOIA exemptions was "insufficiently detailed to establish the absence of a genuine dispute of material fact." *Campbell*, 164 F.3d at 26. The D.C. Circuit agreed with the plaintiff and reversed and remanded the case back to this court with directions to

the FBI to search the electronic surveillance index ("ELSUR")[3] and tickler files [4] and to justify with sufficient detail its decisions to withhold information pursuant to FOIA exemptions 1,[5] 7(C),[6] and 7(D),[7] codified respectively as 5 U.S.C. §§ 552(b)(1), (b)(7)(C), (b)(7)(D). *Id.* at 36.

Cognizant of the mandate and standards established by the Court of Appeals, the FBI reevaluated its documents, conducted new searches and subsequently filed a new motion for summary judgment. Def.'s Mot. for Summ. J. at 1. The new motion asserted that the FBI had complied in full with the standards as directed by the D.C. Circuit. *Id.* The plaintiff filed an opposition claiming that the FBI had still failed to conduct an adequate search and disputing many of the exemptions claimed by the government. *See*

---

[3]    The ELSUR is an electronic index utilized by the FBI to store and organize FBI documents. *Campbell*, 164 F.3d at 27.

[4]    "Tickler" is a term used by the FBI to indicate "a duplicate file containing copies of documents, usually kept by a supervisor. Such files can be of interest to a FOIA requester because they could contain certain documents that failed to survive in other filing systems or that include unique annotations." *Campbell*, 164 F.3d at 27 n.1.

[5]    Exemption 1 protects from disclosure national security information concerning the national defense or foreign policy, provided that it has been properly classified in accordance with the substantive and procedural requirements of an executive order. 5 U.S.C. § 552(b)(1). As restated later in this opinion, the executive order currently in effect is Executive Order 12,958, which was issued on October 14, 1995. 3 C.F.R. 333 (1996).

[6]    Exemption 7(C) provides protection for personal information in law enforcement records, the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

[7]    Exemption 7(D) provides protection for "records or information compiled for law enforcement purposes [which] could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source. 5 U.S.C. § 552(b)(7)(D).

*generally* Pl.'s Mot. for Summ. J.  With cross-motions for summary judgment filed, a

declaration provided by the FBI's FOIA officer, Scott Hodes ("Mr. Hodes"), along with a

Vaughn Index, this court oversaw the remand ordered by the D.C. Circuit and determined

whether compliance with that remand order had been achieved by the defendant.

 In doing so, the court granted the defendant's motion for summary judgment with

respect to FOIA exemptions 7, 7(C), and 7(D) because the court concluded that the

defendant satisfied the D.C. Circuit's directives respecting those exemptions.  Mem. Op.

dated Sept. 28, 2001 at 15-24.  The court, however, was not persuaded by the adequacy

of the defendant's search or its withholding of files pursuant to exemption 1, and it

denied the defendant's motion for summary judgment on that count.  *Id.* at 7-14.

Accordingly, the court granted the plaintiff's motion for summary judgment as to the

adequacy of the search and the defendant's reliance on exemption 1 but denied the

plaintiff's motion for summary judgment in all other respects.  *Id.*  In granting the

plaintiff's motion for summary judgment as to the adequacy of the search, the court also

allowed the plaintiff to conduct limited discovery as to the location and contents of the

disputed tickler files.  *Id.* at 10.  In addition, in an October 4, 2001 order, this court

directed the defendant to show cause as to why the defendant failed to comply with the

D.C. Circuit's mandate in this case.  *See* Order dated Oct. 4, 2001 ("Show Cause Order").

The defendant filed its response to the court's show cause order on October 16, 2001,

contemporaneously with its pending motion to alter or amend the judgment.  The

plaintiff also filed his "motion

for partial reconsideration" on October 16, 2001.[8]  In his motion, the plaintiff requests the

court to alter its decision granting summary judgment to the defendant for FOIA

exemption 7(C), which allows the defendant in some circumstances to withhold

information that may result in the invasion of an individual's privacy.  Pl.'s Mot. for

Recons.

The defendant, in turn, asks the court to alter or amend its decision granting the

plaintiff's motion for summary judgment as to the adequacy of the defendant's search for

the location and contents of tickler files and the allowance of limited discovery for those

files.  Def.'s Mot. to Alter or Amend J. ("Def.'s Mot.") at 1-3.  In that regard, the

defendant requests that the court reverse its decision denying that portion of the

defendant's motion for summary judgment regarding exemption 1, which allows non-

disclosure of certain documents for the purpose of national security.  Id. at 3-8; 5 U.S.C.

§ 552(b)(1).  In addition, on November 5, 2001, the defendant filed a motion for a

protective order staying the court's prescribed limited discovery pursuant to Federal Rule

---

[8]     As noted earlier, both the plaintiff and the defendant filed their motions pursuant
to Rules 52 and 59 of the Federal Rules of Civil Procedure.  Both of these rules,
however, apply to final judgments.  FED. R. CIV. P. 52, 59.  In effect, the parties
are asking the court to alter or amend its prior interlocutory decision concerning
the parties' cross-motions for summary judgment.  Therefore, the court analyzes
their motions pursuant to Federal Rule of Civil Procedure 54(b), which addresses
interlocutory judgments.  FED. R. CIV. P. 54(b).  It should also be noted that the
court's Initial Scheduling Order along with the court's Standing Order state that
"[s]o called 'Motions for Reconsideration' of a prior court ruling are strongly
discouraged . . . .  [in addition][,] the court will not entertain: (a) motions that
simply reassert arguments previously raised and rejected by the court; and (b)
arguments that should have been previously raised, but are being raised for the
first time in the 'Motion for Reconsideration."  Init. Sched. Order ¶ 7 (citation
omitted); Standing Order ¶ 15 (citation omitted).

of Civil Procedure 26(c).[9]  Def.'s Mot. for Protective Order ("Def.'s Prot. Mot.").  For the

reasons that follow, the court denies the plaintiff's and the defendant's motions.

## III.    ANALYSIS

### A.    Legal Standards of Review

#### 1.    Legal Standard for Altering or Amending an Interlocutory Judgment

A district court may revise its own interlocutory decisions "at any time before the

entry of judgment adjudicating all the claims and the rights and liabilities of all the

parties." FED. R. CIV. P. 54(b); *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C.

2000) (citing Federal Rule of Civil Procedure 60(b)'s Advisory Committee Notes).  This

court notes that the standard of review for interlocutory decisions differs from the

standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and

60(b).  *Compare Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001)

*and United Mine Workers v. Pittson Co.*, 793 F. Supp. 339, 345 (D.D.C. 1992) (Hogan,

J.) *with LaRouche v. Dep't of Treasury*, 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000)

(Lamberth, J.) *and Harvey v. District of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996)

(Richey, J.).  A motion pursuant to 59(e), to alter or amend a judgment after its entry, is

not routinely granted.  *Harvey*, 949 F. Supp. at 879.  The primary reasons for altering or

amending a judgment pursuant to Rule 59(e) are an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice.  *Id.*; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per

curiam).  Consequently, motions pursuant to Rule 60(b) may be granted for similar

---

[9]      At the status hearing held on October 18, 2001, the defendant informed the court
that it anticipated filing a motion for a protective order and the court directed that
the motion be filed by November 5, 2001.  Order dated Oct. 18, 2001.

reasons. FED. R. CIV. P. 60(b); *LaRouche*, 112 F. Supp. 2d at 51-52.  Reconsideration of

an interlocutory decision is available under the standard, "as justice requires." *Childers*,

197 F.R.D. at 190.

### 2.    Legal Standard for the Issuance of a Protective Order

Protective orders are issued for good cause shown and to prevent annoyance,

embarrassment, oppression, undue burden, or expense. FED. R. CIV. P. 26(c).  A motion

for a protective order usually follows the movant's unsuccessful attempt and both parties'

good faith efforts to resolve the matter. *Id.*  A protective order may, *inter alia*, deny

discovery completely, limit the conditions, time, place, or topics of discovery, or limit the

manner in which the confidential information is to be revealed. *Id.*; *Burka v. Dep't of

Health and Human Servs.*, 87 F.3d 508, 518 (D.C. Cir. 1996).  The moving party bears

the burden of showing that there is good cause for the issuance of the order. FED. R. CIV.

P. 26(c).  Since such a motion limits the liberal discovery rules, "good cause" is only

established when the movant demonstrates that disclosure would cause a clearly defined

and serious injury. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

A district court may not grant a protective order without a showing of good cause.

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1411 (D.C. Cir. 1996).  In assessing

good cause, a district court must exercise its discretion in light of the relevant facts and

circumstances of the particular case. *Tavoulareas v. Washington Post* Co., 111 F.R.D.

653 (D.D.C. 1986) (Gasch, J.) (applying *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 599

(1978) (holding that the assessment of the common law right of access to information is

best left to the discretion of the trial court)).  A mere showing that discovery may involve

inconvenience and expense will not meet this threshold requirement. *Lehnert v. Ferris

Faculty Ass'n-MEA-NEA*, 556 F. Supp. 316, 318 (W.D. Mich. 1983).  Furthermore, if a

13

court were to issue the protective order, the court must articulate specific facts justifying a protective order since that is imperative to ensure adequate appellate review. *See Nat'l Children's Ctr.*, 98 F.3d at 1411.

### B.    The Court Denies the Plaintiff's "Motion for Partial Reconsideration"

As a preliminary matter, and as alluded to earlier, the court here is faced with cross-motions to alter or amend its September 28, 2001 ruling – an interlocutory judgment because it does not dispose of the whole case on its merits and, thus, does not qualify as a final decision. FED. R. CIV. P. 54(b)*; John Thompson Beacon Windows, Ltd. v. Ferro, Inc.*, 232 F.2d 366, 368 (D.C. Cir. 1956) (quoting *Bostwick v. Brinkerhoff*, 106 U.S. 3, 4 (1882)); *Ford Motor Co. v. Transport Indemnity Co.*, 795 F.2d 538, 543 (6th Cir. 1986) (quoting *Bostwick*, 106 U.S. at 4).

The plaintiff's instant motion specifically targets that portion of the court's September 28, 2001 Memorandum Opinion that grants the defendant summary judgment with respect to the defendant's withholding of information pursuant to FOIA exemption 7(C).  Under exemption 7(C), information may be withheld if it "could reasonably be expected to constitute an invasion of privacy." 5 U.S.C. § 552(b)(7)(C).  "On this point, the Supreme Court has held that '[a]n agency may not withhold records under exemption 7(C) solely because disclosure would infringe legitimate privacy interests, but must balance privacy interests against the public's interest in learning about the operations of its government.'" Mem. Op. dated Sept. 28, 2001 at 18 (quoting *Campbell*, 164 F.3d at 33 (relying on *United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 495 (1994))).

"Both the circuit court and the plaintiff have articulated concern about the issue of invoking exemption 7(C) as to persons who are deceased." *Id.*; *see also Campbell*, 164

14

F.3d at 33; Pl.'s Mot. for Summ. J. at 41.  In its September 28, 2001 Memorandum

Opinion, "the court . . . under the circuit court's mandate and as argued by the parties,

assess[ed] the effect that death has on the balancing test to ensure that the FBI makes a

'reasonable effort to account for the death of a person on whose behalf the FBI invokes

exemption 7(C).'"  *Id.* at 19 (quoting *Campbell*, 164 F.3d at 33).  In assessing this issue,

the court "held that the . . . [FBI] has made adequate efforts to determine whether the

persons who are subjects of information withheld on privacy grounds are still living."

Mem. Op. dated Sept. 28, 2001 at 22.  The plaintiff, nevertheless, "requests that the court

reconsider its ruling with regard to the sufficiency of the . . . [FBI's] efforts . . . ."  Pl.'s

Mot. at 3.

  The plaintiff contends that the court should have ordered the defendant to make a

more thorough search regarding the status of individuals who are the subject of

information withheld on privacy grounds.  Pl.'s Mot.  This contention rests on the

plaintiff's assertion that the defendant "could have used the Social Security Death

Benefits Index [("SSDBI")] via the Internet to determine whether any of the people were

dead."  *Id.* at 1.  The plaintiff attempts to bolster this point by referring to a recently

decided case by the D.C. Circuit that the plaintiff claims "clearly implied that the

[SSDBI] may be a database which should be searched."  Pl.'s Mot. at 2 (referring to

*Schrecker v. Dep't of Justice*, 254 F.3d 162 (D.C. Cir. 2001)).  The court is not persuaded

by this rationale because *Schrecker* was decided in a different context with different

facts, and, more importantly, because the D.C. Circuit in *Schrecker* did not hold that

utilization of the SSDBI is a necessary prerequisite for an adequate search in any case.

*See Schrecker*, 254 F.3d at 166-67.  As the plaintiff himself posits, the D.C. Circuit's

position as annunciated in *Schrecker*, at best, merely "implie[s] that the [SSDBI] *may be*

a database which should be searched." Pl.'s Mot. for at 2 (emphasis added). Notwithstanding the utilization or non-utilization of the SSDBI to determine the status of individuals who are the subject of information withheld on privacy grounds, this court has already "conclude[d] that the information contained in the record before the court adequately balances the competing public interest and the private interests and pays proper respect to the issue of death of the individuals involved." Mem. Op. dated Sept. 28, 2001 at 22. The *Schrecker* case does not state that the SSDBI *must* be utilized in order for such a search to be considered adequate or reasonable – an important distinction that the defendant correctly notes. For the same reason, the court sustains its original determination that the defendant has demonstrated "adequate efforts" in that regard. *Id.* Indeed, the mere possibility that the SSBDI could be a useful resource in this context is not enough to warrant a change in the court's previous ruling since the court does not believe that "justice requires" such a change. *Childers*, 197 F.R.D. at 190. Accordingly, the court denies the plaintiff's motion.

## C.   The Court Denies the Defendant's Motion to Alter or Amend the Judgment

The defendant's motion asks the court to alter or amend that portion of its September 28, 2001 Memorandum Opinion denying the defendant's motion for summary judgment as to the adequacy of the FBI's search concerning the location and contents of tickler files, and, in turn, granting the plaintiff's motion for limited discovery of those files. Def.'s Mot. at 2-3.

### 1.   The Adequacy of the Search for Tickler Files

Turning first to the FBI's search for the tickler files, when this court decided the adequacy of the FBI's search at the summary judgment stage, "the agency ha[d] the burden to show . . . that it searched all likely locations to contain responsive materials."

16

Mem. Op. dated Sept. 28, 2001 at 8 (relying on *Oglesby*, 920 F.2d at 68). At that time, the court determined that "the FBI's failure to adequately search for the ticklers . . . constitute[d] grounds to declare the search inadequate." *Id*. at 10 (relying on *Schrecker*, 254 F.3d at 165). As a result, this court granted the plaintiff the right to limited discovery as to the tickler files. *Id*. at 10.

Given the fact that this court has already authorized discovery and the defendant is simply trying to relitigate the issue, the court denies the defendant's motion on this point. The court still recognizes, however, the defendant's contention that the discovery of the tickler files "is an issue that would be addressed in the [defendant's] supplemental declaration,"[10] a declaration that the defendant claims "should eliminate the need for any discovery." Pl.'s Opp'n at 2; Def.'s Mot. at 3. The defendant filed that supplemental declaration on March 27, 2002. The court addresses the adequacy of the FBI's search for the ticklers later in this opinion in conjunction with the court's evaluation of the defendant's motion seeking a protective order staying the court's prescribed discovery for the location and content of those tickler files. *Supra* at III.E.

---

[10]     In early August 2001, the defendant stated that it would file a "supplemental declaration addressing the issue raised in *Schrecker* . . . . [T]he time necessary to prepare the . . . declaration [,][however,] has been negatively effected . . . [by the] recent terrorist attacks." Def.'s Mot. at 2 (referring to the events surrounding the attacks on our nation on September 11, 2001). The court acknowledges these circumstances and understands that "enormous F.B.I. resources" have been committed to the investigations, and also realizes that "discovery [deadlines] . . . in this case [may] have to be adjusted to take this new reality into consideration." Def.'s Reply at 2.

### 2.   FOIA Exemption 1 (National Security)

Moving next to the defendant's challenge to this court's decision authorizing

limited discovery of the tickler files, the court has delineated how the defendant could

withhold files pursuant to exemption 1:

> [T]he "national security exemption" to FOIA allows the withholding of information "specifically, authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy." *See* 5 U.S.C. § 552(b)(1)(A). Under this exemption, it is well-settled law that "[a]n agency bears the burden to justify exemptions under FOIA." *See Campbell*, 164 F.3d at 30 (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993)). To satisfy its burden, the subject agency may submit a declaration from a qualified individual attesting to the basis for the agency's withholding of information under the exemptions. *See id.*

Mem. Op. dated Sept. 28, 2001 at 11.

In analyzing the FBI's attempt to meet this burden, this court stated that after

"thoroughly review[ing] the Executive Order, affidavits, and indices submitted by the FBI,

the court deems them to be in some respects consistent with the precedent of this circuit,

while in other respects still lacking the detail and specificity required." *Id.* at 12-13. This is

because, "[t]ime and again, the [FBI simply posits that] 'the disclosure of [the] information

[in question] could reasonably be expected to cause serious damage to the national security

. . . .'" *Id.* at 14 (quoting Hodes Decl., Exs.). As this court has stated, "[r]eliance on this

vague and, at best, ambiguous standard is not sufficient under the precedent of this circuit."

*Id.* (relying on *Campbell*, 164 F.3d 20).

The defendant asks the court to reconsider its analysis of the exemption 1 issue, and

states that the exemption 1 "standard . . . set forth in the Executive Order . . . involves the

exercise of judgment based on knowledge of information that can be publicly released and

that cannot be released." *Id*. at 7.[11] The court acknowledges that "'substantial weight' is

merited to the agency's national security determinations." Mem. Op. dated Sept. 28, 2001 at

11 (quoting *Campbell*, 164 F.3d at 30 (citing *King v. United States Dep't of Justice*, 830 F.2d

210, 218 (D.C. Cir. 1987))). In giving due deference to the judgment of the defendant on the

national security issue, however, this court has also stated that the defendant must afford "the

district court an adequate foundation to review . . . the soundness of the withholding."

*Campbell*, 164 F.3d at 30 (quoting *King*, 830 F.2d at 218). Thus, "[d]espite such deference

attributed [to the agency] by the courts," the declaration must meet certain standards in order

to justify a grant of summary judgment. Mem. Op. dated Sept. 28, 2001 at 11.

As explained earlier and in the September 28, 2001 Memorandum Opinion, the

defendant did not meet these standards. *Infra* at III.C.2.; Mem. Op. dated Sept. 28, 2001 at

10-15. The defendant also fails to meet the standard necessary to cause this court to alter or

amend its prior interlocutory ruling on this matter. Indeed, this court is not convinced that

"justice requires" reconsideration of that ruling. *Childers*, 197 F.R.D. at 190. Accordingly,

the court denies the defendant's motion as to FOIA exemption 1.

### D.   The Defendant Has Complied with the Court's Order Directing the Defendant to Show Cause for Withholding Documents Pursuant to FOIA Exemption 1

While the defendant did not meet the exemption 1 requirements previously provided

by the D.C. Circuit in its attempt to attain summary judgment, the court determines that the

defendant now meets the D.C. Circuit's exemption 1 requirements as a result of the

---

[11]    The court is aware that "the FBI re-reviewed all documents according to the provisions of Executive Order No. 12,958, 60 Fed. Reg. 19825 (April 17, 1995)." Mem. Op. dated Sept. 28, 2001 at 12.

defendant's response to this court's October 4, 2001 show cause order. *See Campbell*, 164 F.3d at 29-31.

Indeed, in its response to the court's show cause order, the defendant complies with the circuit court's mandate by providing the plaintiff with "a meaningful opportunity to contest, and the . . . court [with] an adequate foundation to review the soundness of [its] withholding [pursuant to exemption 1]." *Campbell*, 164 F.3d at 30 (citation omitted). The defendant's supplemental declarations by Mr. Hodes of the FBI, which were made after the issuance of the court's show cause order, have supplied the court with "reasonable specificity [as to] why the documents fall within the exemption." *Id.*

In Mr. Hodes's second declaration of November 16, 2001, the FBI supplements the initial declaration of Mr. Hodes of November 9, 2000 with justification pages corresponding to each redaction or withholding that was asserted in the original declaration. Def.'s Resp. to Show Cause Order, Ex. A.  The justification pages "describe[] all of the redactions line by line, detailing all of the classified information withheld." *Id.* at 3.  This line-by-line explanation provided in the justification sheets, supplemented by cross-references to specific paragraphs of Mr. Hodes's November 9, 2002 declaration, brings the defendant into compliance with the D.C. Circuit's requirements for exemption 1 withholdings because it supplies the plaintiff with the specificity he needs to be able to contest the defendant's basis for the redactions, and also provides the court with the information necessary to evaluate whether that basis is sufficient to warrant the protection of exemption 1. *Id.* at 4; *Campbell*,

164 F.3d at 29-31.[12]  In addition, on appeal, the D.C. Circuit stated that a "new declaration

need not exhaustively explain each redaction and withholding, but it must provide sufficient

information to permit Campbell and the district court to understand the foundation for and

necessity of the FBI's classification decisions." *Campbell*, 164 F.3d at 31 (citation omitted).

Accordingly, the court determines that in its response to this court's show cause

order, the defendant has supplied the plaintiff and the court with sufficient information to

comply with the exemption 1 requirements handed down by the D.C. Circuit in this case. *Id.*

at 29-31.

### E.    The Court Denies the Defendant's Motion for a Protective Order and Further Orders the Defendant to Immediately Permit the Plaintiff's Limited Discovery Pursuant to the Court's Prior Ruling

Having resolved the parties' respective motions to alter or amend the court's prior

judgment, the court now considers the defendant's motion seeking a protective order.

#### 1.    The Plaintiff's Discovery Requests and the Defendant's Failure to Comply with the Court's Prior Ruling

The court resolves that the defendant must allow the plaintiff to conduct the limited

discovery granted by the court's September 28, 2001 Memorandum Opinion and

supplemental order.  Mem. Op. dated Sept. 28, 2001; Order dated Sept. 28, 2001.  The

plaintiff has propounded the following discovery requests on the defendant: (1) Notice of

---

[12]       The defendant's response to the court's show cause order provides explanations to the court as to how the court can assess from the information submitted by the defendant whether compliance with the D.C. Circuit's exemption 1 requirements has been reached.  For example, if a particular justification page in Mr. Hodes's Second Declaration explains that the classified information in a particular line of text identifies an intelligence source, then the court must turn to Mr. Hodes's First Declaration in which Mr. Hodes specifically describes the different types of intelligence information withheld and the analysis of harm that would occur if that specific information were disclosed.  Def.'s Resp. to Show Cause Order, Ex. A at 3.  Accordingly, the defendant explains that the justification of the withholding of exemption 1 information is "not complete unless the reader reads both documents in their entirety." *Id.* (underline in the original).

Deposition, (2) Request for Production of Documents, and (3) Second Request for Production of Documents. As stated earlier, the D.C. Circuit directed this court to review the adequacy of the search conducted for the tickler files after determining the FBI's search to be inadequate. *Campbell*, 164 F.3d at 29. The D.C. Circuit also afforded the FBI the opportunity to search for the tickler files and ELSUR records. *Id.* The scope of the search was defined by the plaintiff's initial FOIA request. *Id.* In applying the guidelines provided by the D.C. Circuit, this court denied the defendant's motion for summary judgment with respect to the adequacy of the search and granted the plaintiff's motion for limited discovery. Mem. Op. dated Sept. 28, 2001 at 10.

Since that grant of discovery for the plaintiff, the defendant has demonstrated its non-compliance with the D.C. Circuit's mandate and this court's prior ruling, which the court now reviews. This court directed the defendant to show cause as to why it failed to comply with the D.C. Circuit's 1998 mandate to search for the tickler files and ELSUR records. *Campbell*, 164 F.3d at 29; Show Cause Order. The defendant thereafter filed a response to the court's order and additionally filed its motion to alter or amend this court's judgment permitting further limited discovery. All the while, the defendant still did not allow the plaintiff to conduct limited discovery as this court directed, nor did the defendant complete the search for the tickler files. Def.'s Further Mem. in Support of Def.'s Prot. Mot. at 1. Instead, the defendant filed its motion for a protective order staying discovery.

### 2. The Defendant's Argument that Discovery was Premature is Moot

The defendant argues that this court's grant of discovery was premature because the FBI requested seven field offices to conduct hand or physical searches for the tickler files requested by the plaintiff. Def.'s Mem. in Support of Def.'s Prot. Mot. at 6. That

superfluous argument and others requesting permission to allow the supplemental

declaration[13] is now moot in light of the fact that the supplemental declaration regarding the

search of the seven offices is complete, a search that ultimately yielded no "tickler copies."[14]

5th Hodes Decl. at 9-10.  Thus, the court will not address those arguments.

### 3. The Plaintiff's Discovery Requests Do Not Exceed the Court's Grant of Limited Discovery

The defendant claims that the plaintiff's discovery requests exceed this court's

limited grant of discovery and, as such, amounts to the proverbial "camel's nose under the

tent." Def.'s Mem. in Support of Def.'s Prot. Mot. at 7.  Further, the defendant states that the

plaintiff's counsel is using discovery to obtain material that he cannot discover through the

FOIA request for information regarding the location and contents of the requested tickler

files.  5th Hodes Decl. at 4.  The plaintiff denies these charges vigorously.  Pl.'s Mem. in

---

[13]    The defendant advised the court that the supplemental declaration would be filed by January 31, 2002, but the actual date of the filing was March 27, 2002, almost two months after the deadline had passed.  Never mind the fact that the defendant has failed to request an extension of time or leave from the court to late-file its supplemental declaration, the defendant should be made aware of the fundamental principle that serving and filing submissions in a timely manner benefits the private and public interests in having decisions rendered in a timely manner.  Additionally, the defendant cites the terrorist attacks of and surrounding September 11, 2001 as placing a strain on the department's resources, thus asserting that the prescribed search is highly burdensome on the FBI.  Def.'s Prot. Mot. at 2.  This was aside from the defendant's blanket assertion that the discovery granted to the plaintiff was premature in light of the supplemental declaration that the FBI was preparing.  *Id.*  Without directly commenting on these assertions, the court simply notes for the record that the defendant has circumvented this court's procedures elucidated in the Initial Scheduling Order, Standing Order, and the federal rules, along with the directives stated in the court's September 28, 2001 Memorandum Opinion.

[14]    The court notes that the Fifth Declaration is the sole declaration wherein the nomenclature of the term "tickler files" is disputed.  5th Hodes Decl. at 4, 5.  Mr. Hodes states that the FBI defines "ticklers" as carbon or duplicative copies and, as such, there are no separate tickler files.  *Id.*  This distinction is irrelevant to the ultimate determination of the court's denial of the defendant's motion to stay discovery.

Resp. to Def.'s Prot. Mot. at 4. Rather, the plaintiff asserts that he is using discovery for its

appropriate purpose – to aid the plaintiff in establishing where ticklers may be located and

how they may be found. *Id.* The court agrees with the plaintiff's position because it is

precisely why the court originally allowed limited discovery as to the location and contents

of the disputed tickler files.

### 4. The Defendant Fails to Demonstrate the Necessary Predicates Under Rule 26 for the Issuance of a Protective Order

The federal rules caution seekers of protective orders that the scope of discovery is

very broad. *See* FED. R. CIV. P. 26. In assessing the merits of the defendant's request, the

court notes that a protective order can issue only if the defendant demonstrates the two

predicates of "good cause" and the occurrence of "annoyance, embarrassment, oppression,

undue burden or expense." FED. R. CIV. P. 26(c). The rule also provides that the movant –

the defendant herein – must confer with the non-movant – the plaintiff herein – and make a

good faith effort to resolve the discovery dispute without requesting the court's intervention.

*Id.* There is no indication from the motions, however, that the defendant made a good faith

effort to resolve the instant discovery dispute before resorting to the court for its assistance in

resolving the issue. Additionally, the court directs the defendant's attention to the court's

Initial Scheduling Order, which provides in relevant part that:

> . . . counsel are required, under both Federal Rule of Civil Procedure 26(f)
> and Local Civil Rule 7.1(m), to confer in good faith in an effort to resolve
> any discovery dispute before bringing it to the court's attention. If, in
> what should be the unusual case, counsel are unable to resolve their
> dispute, counsel shall contact chambers in order to arrange for a telephone
> conference with the court. Counsel shall not file a discovery motion
> without prior consultation with opposing counsel. Leave of court is
> required before the filing of a discovery dispute-related motion. Counsel
> are advised that if the court is called upon to resolve such a motion, the
> losing attorney (not the principal) will be sanctioned pursuant to Federal
> Rule of Civil Procedure 37(a)(4).

Init. Sched. Order ¶ 3; *see also* Standing Order ¶ 8.

While the defendant did seek leave from this court to file its instant discovery motion at the October 18, 2001 status hearing, and leave was granted by the court, that fact alone does not abrogate the requirement that the defendant consult with the plaintiff and make a good faith effort to resolve the discovery dispute before filing its discovery motion.  *Id.*  The defendant fails to show the court that these conciliable steps were taken before filing the instant motion.  Despite the defendant's non-compliance with the federal rules, local rules, Initial Scheduling Order, and Standing Order, the court will in this instance proceed to assess the arguments posited by the defendant's motion.

Even if the defendant did attempt to reconcile the discovery dispute over the tickler files before filing its motion, the defendant still fails to demonstrate Rule 26's two predicates necessary for the issuance of a protective order.  The "good cause" that satisfies the first predicate under Rule 26 must clearly define a serious injury.  *Glenmede Trust Co.,* 56 F.3d at 483.  Moreover, broad allegations of harm, unsubstantiated by specific examples will not suffice.  *Id.*; *Nat'l Children's Ctr.*, 98 F.3d at 1411 (remanding case for the district court for specific reasons substantiating the grant of the protective order).  Here, the FBI relies on the completion of the supplemental declaration to absolve the need for discovery, after asserting that no tickler files were found, and without allowing the plaintiff any means by which the plaintiff can determine the adequacy of the search.  Def.'s Mem. in Support of Def.'s Prot. Mot. at 2.  This does not comport with the legal standard necessary to prove the need for a protective order.  In averring that substantial harm would ensue if the protective order is not issued, the defendant states that the allowed discovery would be highly burdensome on the FBI in conducting a hand search of all the files which are manually stored.  *Id.*; Def.'s Not. of Filing 5th Hodes Decl. at 1-2.  While good cause would ordinarily be established if the

25

discovery at issue constitutes an undue burden, the trial court has the discretion to examine the facts and circumstances of the case to adjudicate the request for a protective order. *Tavoulareas*, 111 F.R.D. 653 (determining that lifting the seal on discovery materials would be an undue burden where reliance on the protective order facilitated trial preparation without abuse of the discovery process). The defendant, however, fails to show specific examples of a clearly defined harm or burden that would arise from the plaintiff's opportunity to understand the filing system – where ticklers may be located and how they may be found. Pl.'s Resp. to Def.'s Prot. Mot. at 4. Moreover, at no time did the plaintiff request the hand search that the defendant says would be burdensome. The defendant's assertion merely reflects an inconvenience and expense that has no direct relation to the discovery request and, thus, poses no challenge to the prescribed discovery since conducting a hand search is a different issue from allowing the plaintiff the limited discovery to determine the location and contents of the disputed tickler files.

  *Glenmede Trust* involved a trust company defendant represented by a law firm in a diversity action where the plaintiff alleged breach of fiduciary duty, fraud, breach of contract, and negligence – all claims arising from the defendant's role in a stock repurchase transaction. *Glenmede Trust*, 56 F.3d at 478. The defendant and his law firm sought to reverse an order denying their request for a protective order relating to all work performed for the client (i.e., the defendant) regarding the repurchase transaction. *Id.* The Third Circuit upheld the denial because the law firm failed to establish "good cause" for withholding all of the law firm's file documents pursuant to a confidentiality agreement between itself and the defendant. *Id.* The Third Circuit determined that generalized allegations of injury to reputation and relationships, and embarrassment that may result from dissemination of privileged documents was insufficient to justify judicial endorsement of an umbrella confidentiality agreement. *Id.* at 484.

26

Just as the defendant in *Glenmede Trust* alleged a generalized injury of its reputation and relationships with other clients, similarly, the defendant here alleges a generalized injury that compliance with the plaintiff's discovery request and this court's order for limited discovery would be a strain on its resources. Def.'s Prot. Mot. at 2. In addition, the defendant fails to state the specific injury that would justify as harsh a measure as the issuance of a protective order. To wit, throughout the course of its arguments[15] to the court, the defendant does not state with the requisite specificity exactly how the injury would occur, nor does the defendant put forward facts that satisfy the "good cause" requirement. In an attempt to satisfy the "good cause" requirement, the defendant simply posits that an undue burden will accrue to the defendant if the plaintiff's discovery is allowed to occur because of the overbreadth of the plaintiff's discovery request and the defendant's need to submit some of the requested information to the classification review process. Def.'s Prot. Mot. at 7-10. But such conclusory statements only go to show inconvenience and expense on the part of the defendant and are, therefore, not sufficient to demonstrate the good cause required for the issuance of a protective order. *Lehnert*, 556 F. Supp at 318.

Furthermore, the Fifth Hodes Declaration makes much of the fact that since the ticklers were not located in the offices searched, then the only means left would be a hand or physical search of all the FBI files, which would impose a great burden on the FBI. 5th Hodes Decl. at 6. All the plaintiff wants, however, is to elicit information regarding the location and contents of the ticklers. Pl.'s Resp. to Def.'s Prot. Mot. at 4-6. Additionally, the

---

[15]     The defendant asserts that the court is "well aware of the . . . case law" and, as such, finds no need to summarize or apply the law to the facts of this case. Def.'s Prot. Mot. at 7. The court admonishes defendant's counsel that one of the main functions of litigators is to utilize their knowledge of case law and their ability to apply that body of law to the facts of their clients' cases. As one court has remarked, the premise of an adversarial system is that courts do not sit as self-selected entities of legal inquiry and research, but as arbiters of legal questions presented and argued by the parties before them. *Tom v. Heckler*, 779 F.2d 1250, 1259-60 (7th Cir. 1985) (Posner, J., dissenting).

plaintiff redacted his original discovery request, further limiting the plaintiff's discovery and even withdrawing a file requested in one instance. *Id.* at 5-6. As stated before, this discovery is necessary for the determination of the adequacy of the search conducted and to measure the level of compliance with the D.C. Circuit's mandate. Thus, the court denies the defendant's motion for a protective order and hereby directs the defendant to immediately comply with the plaintiff's discovery requests forthwith.

### 5.   Compensation to the Plaintiff

Finally, the issue remains as to whether the defendant's counsel must pay for the plaintiff's attorneys' fees, costs, and expenses related to the plaintiff's opposition to the defendant's motion for a protective order. The question answers itself. As spelled-out earlier, pursuant to Federal Rule of Civil Procedure 37(a)(4), the court will sanction the losing attorneys (not the principal). FED. R. CIV. P. 37(a)(4); Init. Sched. Order ¶ 3; Standing Order ¶ 8. Accordingly, the court further directs the defendant's counsel to pay the plaintiff's attorneys' fees, costs, and expenses relating to the defendant's motion for a protective order. In addition, the plaintiff has 30 days to submit a list of itemized expenses both to the defendant's counsel and the court so that the court can calculate the exact amount which the defendant's counsel must pay the plaintiff. The defendant's counsel is allowed to file a response to the plaintiff's itemized expenses due within five days from the date the plaintiff's submission is filed with the court.[16] An order listing the exact amount owed to the plaintiff by defense counsel will follow once the court receives the aforementioned submission(s).

---

[16]     It should be made clear that the defendant need not file a response. If the defendant does wish to file a response to the plaintiff's calculated expenses, however, that response shall be limited to the narrow issue of calculating the proper compensatory sum owed to the plaintiff. In other words, the opportunity for the defendant to file the aforementioned response is not an additional opportunity to relitigate the issues resolved by this and the September 28, 2001 rulings.

Although the court may also impose sanctions on defense counsel payable to the court's registry, the court will refrain from levying further punishment on the defense.  The court will not be so lenient should this same scenario occur again.

## IV.   CONCLUSION

For the foregoing reasons, the court denies the plaintiff's "motion for partial reconsideration" of the court's September 28, 2001 decision, and also denies the defendant's motion to alter or amend that same ruling.  In addition, the court denies the defendant's motion for a protective order staying discovery.  Furthermore, the defendant's counsel is ordered to pay the plaintiff's attorneys' fees, costs, and expenses relative to the defendant's motion for a protective order.  An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed and issued on this _**20**_ day of June 2002.

Ricardo M. Urbina
United States District Judge

29